# In the United States Bankruptcy Court
# for the
# Southern District of Georgia
## Savannah Division

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | Chapter 11 Case |
| BROOKS LANIER SIMMONS | ) | |
| HEATHER L. WILLIAMS | ) | Number <u>10-60323</u> |
| | ) | |
| *Debtors* | ) | |
| | ) | |
| | ) | |
| | ) | **FILED** |
| | ) | Samuel L. Kay, Clerk |
| BANK OF NEWINGTON | ) | United States Bankruptcy Court |
| | ) | Savannah, Georgia |
| *Movant* | ) | By lbarnard at 2:57 pm, Sep 17, 2010 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BROOKS LANIER SIMMONS | ) | |
| HEATHER L. WILLIAMS | ) | |
| | ) | |
| *Respondents* | ) | |

## <u>MEMORANDUM AND ORDER</u>
## <u>ON MOTION FOR RELIEF FROM STAY</u>

Debtors filed Chapter 11 on April 2, 2010. <u>Petition</u>, Dckt. No. 1. Debtors

are individuals who experienced financial loss through farming on the husband's

("Simmons") family farm. Simmons was severely injured in a single car automobile accident

and currently is not working. The wife ("Williams"), is trustee of a trust for the benefit of

Simmons, and in that capacity has borrowed from the Bank of Newington (the "Bank") a

total of $451,800.00, secured by 190 acres in Bulloch County (the "Property"), on which the

farming operation was located. The note is in default, Debtors have not made any payments since March of 2009, and the Bank has moved the Court for relief from the automatic stay. After an evidentiary hearing and after reviewing relevant law, I make the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Williams is trustee of a trust set up by Simmons's father. The trust holds the Property for Simmons's benefit, and will convey title to him when he turns thirty-five years old. The Property has been in the Simmons family for over 100 years and includes approximately three acres in home sites; a ten acre pond; ninety-five and a half acres of cultivated land; slightly more than sixty-seven acres of woodlands, wetlands, and roads; and fourteen and a half acres of planted pine. Two of the three houses on the Property are uninhabitable, the third is in need of significant repairs, and Debtors reside off the Property, in Sylvania, Georgia.

In 2007 Williams entered into a $151,800.00 loan agreement with the Bank for the purpose of getting Simmons into the trucking business, a venture which was unsuccessful. In 2008 Williams entered into a second loan agreement for $300,000.00 with the Bank so that Simmons could farm peanuts on the Property in 2009, as he had done in 2007 and 2008. In those years, Simmons sustained substantial losses through the operation of the farm. Debtor has not farmed since 2008.

As collateral for those loans Williams granted the Bank a first priority deed to secure debt on the family farm.  The parties entered into the most recent note on March 6, 2009.  It had an interest rate of 11.5% and became fully due and payable on March 6, 2010.  No payments have been made since March 6, 2009.

Shortly after the March 6, 2009, loan agreement was signed, Simmons was involved in a single car accident which caused serious injuries, eventually resulting in the amputation of his leg.  Simmons is not engaged in farming and his Social Security Disability claim has been denied.  He is currently appealing that decision.  Williams stated at the hearing that Simmons is eligible for Supplemental Security Income ("SSI").

Debtors are currently deriving income from the following sources:

1) Williams's full time and part time employment of about $6,189.92 per month;

2) Simmons's beneficiary interest in his mother's retirement account of about $411.00 per month; and

3) Land rent for the Property of $5,000.00 per year which they hope to increase in future years to $10,000.00.

This totals $7,017.59 of monthly income, a number which would increase if the disability appeal is successful.  Debtors' Schedule J details $3,041.00 of monthly expenses, not including debt service to the Bank or to unsecured creditors.

Debtors submitted the appraisal of Andrew Haman, Jr. (Real Estate Appraisal, Exhibit D-1) and the Bank offered the opinion of Remer D. Clifton regarding the value of the Property. Both appraisers were stipulated as experts. Mr. Haman concluded a value of $570,000.00 for the Property, and Mr. Clifton concluded a value of $600,000.00. For the purpose of this Motion for Relief from Stay, I adopt Debtors' proposed value and conclude that the value of the Property is $570,000.00.

The Bank filed a proof of claim for the sum of $563,703.37 (the "Secured Debt"). Proof of Claim, Exhibit M-2. Debtors also have approximately $377,490.00 in unsecured debt, including Simmons's medical bills and approximately $27,000.00 in credit card debt. Debtors own their residence subject to a mortgage and they pay approximately $135.00 per month on Williams's student loans. Williams testified that the medical bills may be waived or paid if Simmons's disability appeal is approved. Debtors have proposed a plan under which the Bank's entire claim would be paid over twenty-five years at 5.25% interest (monthly payments of $3,377.95), and the unsecured creditors would be paid all of Debtors' disposable income for five years (but not less than $23,797.00). Plan, Dckt. No. 51 (July 29, 2010). Finally, the plan calls for Debtors to make a contribution to the reorganization effort for the right to retain any equity that remains after the reorganization. The amount of the contribution would be determined by auction at confirmation, but would not be less than $500.00. Id.

In the meantime, Debtors have proposed adequate protection payments of

⸖AO 72A
(Rev. 8/82)

$3,500.00 per month on the Secured Debt, to be paid to the Bank of Newington. The Bank has alleged that the plan violates the absolute priority rule, that the interest rate is insufficient, that the amortization period is too long, that there is no equity in the Property, that it is not necessary for an effective reorganization, and that relief from the stay should be granted under 11 U.S.C. § 362(d)(2). Motion, Dckt. No. 21 (May 11, 2010); Objection, Dckt. No. 61 (August 16, 2010).

## CONCLUSIONS OF LAW

### Standard for Relief From Stay

11 U.S.C. § 362(d)(2) provides that:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . .
>
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if—
> >
> > > (A) the debtor does not have an equity in such property; and
> > >
> > > (B) such property is not necessary to an effective reorganization . . . .

### There is No Equity in the Property

In the instant case, Debtor owes $563,703.37 and the Property is worth $570,000.00. When the transaction costs associated with selling the Property and the interest allowed pursuant to 11 U.S.C. § 506(b) are considered, there is no remaining equity in the

Property.[1] Pursuant to 11 U.S.C. § 362(g),[2] once the movant has proved a lack of equity, the

burden shifts to Debtor to prove that the Property is necessary to an effective reorganization.

## The Property is Not Necessary to an Effective Reorganization

To carry this burden, Williams testified that Simmons will be able to farm

the Property in about a year, once his prosthetic leg is fitted and Simmons is sufficiently

rehabilitated. This testimony directly contravenes the suggestion that Simmons is disabled

and is therefore entitled to SSI, which "is designed to help aged, blind, and disabled people,

who have little or no income; and . . . provides cash to meet basic needs for food, clothing,

and shelter." *Supplemental Security Income*, SSA.GOV, http://www.ssa.gov/ssi/ (last visited

August 19, 2010). Even more importantly, this testimony does not establish that the Property

is necessary to an effective reorganization.

United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates,

Ltd., in applying 362(d)(2), defined "necessary to an effective reorganization" as:

[N]ot merely a showing that if there is conceivably to be an

---

[1] I note that even if I adopted the Bank's higher proposed value of $600,000.00, I would reach the same conclusion for the reasons stated herein.

[2] "(g) In any hearing . . . concerning relief from the stay of any act under subsection (a) of this section—
(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
(2) the party opposing such relief has the burden of proof on all other issues."

11 U.S.C. § 362(g)

effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means . . . that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

Timbers, 484 U.S. 365, 375-76 (1988).  Because Simmons has not farmed since 2008, because his last two years of farming ended with substantial losses, because Debtors maintain that he is disabled, and because the Property cannot generate enough rental income to service the debt on the Property, I find that the Property is not necessary for an effective reorganization.

"Necessary" is defined as "having the character of something that is logically required" or "essential."  Webster's Third New International Dictionary 1510 (1986).  While Debtors can show that it is theoretically possible for their plan to be confirmed, they have not shown that the Property is "logically required" for the success of a plan.  In fact, Debtors have shown that they can make a high monthly payment to creditors without the income from the farm, and that if the plan's proposed $3,377.95 monthly payments were not going to pay for the farm, they could be directed to the unsecured creditors in order to increase their dividends.

Rather than contributing to Debtors' cash flow, the Property acts as a severe drag on Debtors' resources, which must be diverted from servicing other debt to cover the cash shortfall caused by the payments on the Property.  Debtors collect $5,000.00 per year

from the lease of the Property and Debtors' plan calls for yearly debt service of $40,535.40 on that same Property. If the Property were generating positive cash flow as opposed to draining cash, it might be "logically required" to make the plan work. Here, however, the whole point of Debtors' proposed plan is to save the farm at the expense of the unsecured creditors. The Property is not "essential" to the reorganization because Debtors have shown that they can make substantially higher payments to creditors without it.

Debtors have shown that they can propose a plan that allows them to keep the Property, but not that the Property is necessary to an effective reorganization as defined in Timbers. Accordingly, because there is no equity in the Property and because it is not necessary to an effective reorganization, relief from stay should be granted pursuant to 11 U.S.C. § 362(d)(2).

ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that the Motion for Relief from Stay is GRANTED.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 16th day of September, 2010.